**Joseph STASSI, Sr., Petitioner,**

v.

**Marvin S. HOGAN, Warden, United States Penitentiary, Atlanta; Norman Carlson, Director of the United States Bureau of Prisons; Maurice Sigler, Chairman of the United States Board of Parole, Respondents.**

**Civ. A. No. C75–906A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 28, 1985.

Joseph Stassi, Sr., pro se.

Robert Ross, Asst. U.S. Atty., Atlanta, Ga., for respondents.

## ORDER

FORRESTER, District Judge.

This action is before the court on the petitioner's motion to have the respondents held in civil contempt and on the government's motion to have certain exhibits filed under seal and other exhibits taken for an *in camera* inspection. The exhibits which are the subject of the government's motion are the various documents, letters, memoranda, and judicial opinions which make up petitioner's official parole commission file. Exhibits 1, 4, 6, and 44 are highly confidential, and the government asks that those exhibits be reviewed only by the court. The other exhibits are also confidential but the government has no objection to Mr. Stassi examining them. As petitioner has not filed any response to the government's motion, the motion is deemed unopposed and is GRANTED. Exhibits 2, 3, and 7–43 shall be filed under seal. Exhibits 1, 4, 6,

and 44 shall be reviewed *in camera* by the court and returned to the government.

Petitioner's petition to have the respondents held in civil contempt is based upon respondents' alleged failure to comply with a series of orders entered in this case in 1975 by the late Judge Edenfield. Judge Edenfield concluded that petitioner's procedural due process rights had been violated because he had been classified as a "Special Offender" without notice or a fair opportunity to challenge the designation. Judge Edenfield concluded that this designation impacted upon petitioner's ability to get a fair parole hearing. *Stassi v. Hogan*, 395 F.Supp. 141 (N.D.Ga.1975). Judge Edenfield subsequently ordered the government to expunge from petitioner's prison records the "Special Offender" designation and the materials on which it was based. Judge Edenfield further ordered the government to grant petitioner a new parole hearing with the files properly purged. Order of August 12, 1975. Finally, Judge Edenfield ordered that the new parole hearing be conducted by hearing examiners who "to the maximum extent possible have no prior knowledge whatsoever of petitioner's prior 'special offender' classification or of materials or information contained in his file on which such a designation was made." Order of October 15, 1975.

The government appealed Judge Edenfield's order, and the Fifth Circuit entered a stay pending appeal of a portion of the order not relevant to the present petition. *Stassi v. Hogan*, No. 75–3176 (5th Cir. Sept. 5, 1975). After the court of appeals denied the stay as to the remaining parts of Judge Edenfield's order, a parole hearing was held in accordance with Judge Edenfield's directives. On October 23, 1975 petitioner was granted parole effective December 9, 1975, to an approved plan.

Petitioner's expectation of freedom was short-lived, however. Prior to the effective parole date petitioner was convicted in the Southern District of New York of importing heroin. On November 25, 1975 the parole board reopened and retarded peti-

tioner's parole. On February 27, 1976 petitioner received an additional 30-year sentence to run concurrent with the 18-year sentence he had been previously serving. On June 24, 1976 the parole board conducted a hearing and decided that, based on the conviction and sentence imposed by the Southern District of New York, petitioner's parole should be rescinded. The parole board notified petitioner on July 21, 1976 that because of the subsequent conviction and sentence he was not eligible for parole until May 4, 1977. Petitioner has been reviewed for parole on at least four separate occasions since that time, and on each occasion the parole board has denied the request based on the severity of his offenses.

 Petitioner's motion to have the respondents held in civil contempt is based upon the fact that certain documents presently in his parole file still bear the "Special Offender" designation, and other documents provide the information upon which such designation was based. Petitioner contends that the existence of such documents in his parole file is in direct violation of Judge Edenfield's order of August 12, 1975. Petitioner further complains about the fact that J. Robert Cooper, the Assistant U.S. Attorney who represented the government on petitioner's habeas corpus petition, sat as an en banc Parole Commissioner when the commission reviewed petitioner's case in 1977. Petitioner claims that this violated Judge Edenfield's order of October 15, 1975, which required that the members of the Board hearing petitioner's case for parole have "to the maximum extent possible" no prior knowledge of petitioner's prior "Special Offender" status.

After reviewing Judge Edenfield's orders, all of the documents in the file, and the pleadings of the parties, the court cannot say that there is clear and convincing evidence that respondents have violated Judge Edenfield's orders. Judge Edenfield

ordered respondents to expunge from petitioner's file any documents bearing the special offender label and any documents which provided the basis for that designation. This the respondents did. Judge Edenfield ordered respondents to give petitioner a new parole hearing in the absence of such documents before commissioners who, to the greatest extent possible, had no knowledge of his prior designation as a special offender. Respondents also did this. Petitioner got his second parole hearing free from any evidence of his special offender status and in fact was granted parole.[1] The fact that his parole was rescinded was due to his subsequent conviction and sentence rather than his prior designation as a special offender. The fact that petitioner had been designated a special offender does not appear to have been considered by the parole commission at all.

Judge Edenfield's order to expunge the special offender designation and supporting documents from petitioner's file was based upon his conclusion that designating petitioner as a special offender without notice and a fair opportunity to be heard violated his procedural due process rights and adversely affected his chances for parole. However, as Judge Edenfield subsequently decided in *Mayo v. Sigler,* 428 F.Supp. 1343 (N.D.Ga.1977) parole decisions are *not* influenced in any significant way by the special offender designation. The special offender designation "is primarily an administrative device whereby the Bureau [of Prisons] insures that certain prisoners are not transferred to other prisons or allowed to participate in community programs without prior approval from the Bureau's central office." *Id.* at 1349. The requirements of procedural due process do not apply to such administrative designations. *Makris v. United States Bureau of Prisons,* 606 F.2d 575 (5th Cir.1979); *Solomon v. Benson,* 563 F.2d 339 (7th Cir. 1977); *Mayo v. Sigler,* 428 F.Supp. 1343 (N.D.Ga.1977); *see Moody v. Daggett,* 429

---

1. The hearing at which Cooper sat occurred after the parole was rescinded. Cooper has submitted an affidavit that he did not let his knowledge of petitioner's prior designation as a

special offender influence his deliberations during that hearing. The court sees no evidence that the order of October 15, 1975 was violated.

U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). Thus, the reasoning upon which Judge Edenfield's original order was based—that petitioner was deprived of procedural due process by being designated a special offender without notice and an opportunity to be heard—is no longer valid, and the fact that some documents in his file may still bear that designation does not deprive him of any rights. Since the purpose of civil contempt is remedial rather than to vindicate the authority of the court, and since it does not appear that petitioner today would be entitled to the relief granted under the original order, the court cannot find respondents in civil contempt even if they have not complied with Judge Edenfield's order.

One final reason for denying petitioner's petition is that petitioner has known at least since 1980 that he has been designated as a Central Monitoring Case.[2] In fact, after being advised of his status as a Central Monitoring Case and the effect thereof, petitioner signed a statement that he did not object to such designation. If petitioner was given notice of his designation as a Central Monitoring Case and an opportunity to object and did not do so, it is difficult to see how he could possibly be harmed by the existence in his files of documents designating him as a special offender, a term which has almost precisely the same meaning as a Central Monitoring Case.

In sum, the court finds a lack of clear and convincing evidence that respondents violated a valid court order. Further, the court holds that even if respondents had violated the order petitioner would not be entitled to the remedy of civil contempt because the reasoning on which the underlying order was based has been subsequently overruled and because petitioner cannot show any harm flowing from his continued designation as a special offender. The petition to have respondents held in civil contempt is DENIED. This action is hereby DISMISSED.

---

**2.** The Central Inmate Monitoring System replaced the special offender designation system in 1976. Although there are differences in the manner in which the designation is made and the prisoner is notified of the designation, being designated a Central Monitoring Case has virtually the same effect as the prior special offender designation. It is an administrative designation which insures that certain classes of prisoners not be transferred to other institutions or be allowed to participate in community programs without the approval of the Bureau of Prisons. *Mayo v. Sigler, supra* at 1345.